## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JIMMY NGO,

     *Plaintiff*,

v.                              No. 2:23-cv-00056-SMD-DLM

CLAYTON SLAUGHTER AND J.B.
HUNT TRANSPORT, INC.,

     *Defendants*.

### OMNIBUS OPINION AND ORDER ON DEFENDANTS'
### MOTIONS FOR PARTIAL SUMMARY JUDGMENT

**THIS MATTER** is before the Court on the Defendants' motions for partial summary judgment. Defendants filed two motions for partial summary judgment on October 4, 2024. (Doc. 73 ("Defs.' Negligence SJ Mot."); Doc. 74 ("Defs.' Punitive Damages SJ Mot.")). Plaintiff filed his responses on October 23, 2024. (Doc. 76 ("Pl.'s Punitive Damages Resp."); Doc. 77 ("Pl.'s Negligence Resp.")). Defendants filed their replies on November 15, 2024. (Doc. 81 ("Defs.' Negligence Reply"); Doc. 83 ("Defs.' Punitive Damages Reply")). Upon consideration of the record, pleadings, and the relevant law, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' Partial Summary Judgment Motions.

### FACTUAL BACKGROUND

On February 16, 2021, Plaintiff Jimmy Ngo ("Plaintiff") was traveling eastbound on I-40. (Pl.'s Negligence Resp. at 1). Behind his vehicle was a tractor-trailer, driven by Defendant Clayton Slaughter ("Defendant Slaughter") and operated by Defendant J.B Hunt Transportation, Inc. ("Defendant J.B. Hunt"). (Defs.' Punitive Damages SJ Motion, Ex. A at 8). It was snowing and Defendant Slaughter was driving slowly, around 40 miles per hour. (*Id.*). Defendant Slaughter was wearing a hands-free Bluetooth headset, but did not take any calls or otherwise use his phone during the trip. (*Id.* at 10; Pl.'s Punitive Damages Resp. at 2). Defendant

Slaughter passed Plaintiff's car, abruptly changed lanes, and side-swiped Plaintiff's car.  (Pl.'s Punitive Damages Resp. at 5 ¶¶ V, Z).

Defendant Slaughter, seemingly unaware of the incident, continued to drive for another 60 miles.  (*Id.* ¶ AA).  Plaintiff followed behind, flashing his lights to try and get Defendant Slaughter to pull over.  (*Id.*).  When he finally did so, Plaintiff called the police.  (Doc. 1, Ex. A ("Compl.") at 3).  The investigating officer, Deputy Joe Martinez, confirmed that the damage to Plaintiff's vehicle was consistent with a side swipe from a tractor-trailer, but did not issue a citation or charge against Defendant Slaughter.  (*Id.*, Ex. I at 3; Defs.' Punitive Damages SJ Mot., Ex. B at 2).  Defendant J.B. Hunt internally investigated the accident and completed a report. (Pl.'s Punitive Damages Resp., Ex. B at 13).  Defendant Slaughter maintains that he did not hit Plaintiff Ngo's vehicle.  (Pl.'s Negligence Resp., Ex. B at 13).  Defendant J.B. Hunt then gave Defendant Slaughter a six-minute online training about foul-weather driving.  (*Id.*, Ex. C at 10– 11).  Although Plaintiff states in his complaint that he suffered physical injuries due to the wreck, (Compl. at 3), he has not submitted any evidence of these injuries.

## PROCEDURAL BACKGROUND

Plaintiff filed suit on December 20, 2022, in the Second Judicial District Court of Bernalillo County, New Mexico.  (Doc. 1 at 2).  Plaintiff asserts claims of negligence and gross negligence against Defendant Slaughter.  (Compl. at 3–4).  Plaintiff claims Defendant J.B. Hunt is vicariously liable for Defendant Slaughter's alleged negligence under theories of respondeat superior and statutory employee.  (*Id.* at 5).  Plaintiff further asserts that Defendant J.B. Hunt was negligent in its hiring, retention, training, and supervision of Defendant Slaughter.  (*Id.*). Defendants removed the case to federal court on January 1, 2023, invoking the Court's diversity jurisdiction.  (*Id.* at 1).

Defendants filed two motions for partial summary judgment.  As to Defendant Slaughter, they seek summary judgment on Plaintiff's request for punitive damages.  (Defs.' Punitive Damages SJ Mot. at 1).  As to Defendant J.B. Hunt, they seek summary judgment on Plaintiff's negligent hiring, retention, training, and supervision claims.  (Defs.' Negligence SJ Mot. at 3). Plaintiff responded to Defendants' motions and "does not oppose summary judgment on the negligent hiring of Defendant Slaughter."  (Pl.'s Punitive Damages Resp.; Pl.'s Negligence Resp. at 11).  Defendants replied.  (Defs.' Punitive Damages Reply; Defs.' Negligence Reply).

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Butler v. Daimler Trucks N. Am., LLC*, 74 F.4th 1131, 1140 (10th Cir. 2023).  Disputes are "genuine" "if there is sufficient evidence on each side that a rational trier of fact could resolve the issue either way."  *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal citations omitted).  The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party, the facts "must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001).

## DISCUSSION

The Parties have submitted separate statements of undisputed material facts ("UMF") for the negligent retention, training, and supervision claims and the punitive damages claim.  The following narrations draw from Defendants' UMFs within its motions, Plaintiff's responses to Defendants' facts, Plaintiff's UMFs, and Defendants' replies.  (Defs.' Negligence SJ Mot. at 4–5

("Defs.' Negligence UMF"); Pl.'s Negligence SJ Resp. at 2–3 ("Pl.'s Resp. to Defs.' Negligence

UMF"); Pl.'s Negligence SJ Resp. at 3–6 ("Pl.'s Negligence UMF"); Defs.' Negligence Reply at

3–6 ("Defs.' Resp. to Pl.'s Negligence UMF"); Defs.' Punitive Damage SJ Mot. at 3–4 ("Defs.'

Punitive Damages UMF"); Pl.'s Punitive Damages SJ Resp. at 2–3 ("Pl.'s Resp. to Defs.'

Punitive Damages UMF"); Pl.'s Punitive Damages SJ Resp. at 3–7 ("Pl.'s Punitive Damages

UMF"); Defs.' Punitive Damages Reply at 3–8 ("Defs.' Resp. to Pl.'s Punitive Damages

UMF")).  The Court has summarized only those facts material to the motions and has resolved

any discrepancies in the Parties' statements of undisputed material facts in the light most

favorable to the Plaintiff, as the non-movant.

## I.   Defendants' Negligence Partial Summary Judgment Motion

### A.  Undisputed Material Facts

At the time of this incident, Defendant Slaughter had a valid commercial driver's license

(CDL), which he had held for nearly thirty years.  (Defs.' Negligence UMF ¶ 1; Pl.'s Resp. to

Defs.' Negligence UMF ¶ 1).  His CDL had never been suspended or revoked and he had no

speeding tickets or moving violations from within the past ten years.  (Defs.' Negligence UMF

¶¶ 2, 7; Pl.'s Resp. to Defs.' Negligence UMF ¶¶ 2, 7).[1]  While at J.B. Hunt, however, the

monitoring system on Defendant Slaughter's truck recorded him as breaking the company-

imposed speed limit 19 times.  (Pl.'s Negligence UMF ¶ N; Defs.' Resp. to Pl.'s Negligence

UMF ¶ 2).  The company also issued three internal citations against Defendant Slaughter for

---

[1] Plaintiff disputes Defendants' statement that Defendant Slaughter "had not received any speeding citations or other moving violations" as untrue given Defendant Slaughter's violations of the company-imposed speed limit. (Defs.' Negligence UMF ¶ 2; Pl.'s Resp. to Defs.' Negligence UMF ¶ 7).  Plaintiff further contests that Defendant Slaughter's violations of the company speed limit render his lack of speeding tickets "irrelevant."  (Pl.'s Resp. to Defs.' Negligence UMF ¶ 7).  The Court interprets Defendants UMF as correctly stating that Defendant Slaughter had not received a speeding ticket within the ten years leading up to this accident.  Plaintiff's argument to the contrary, without an accompanying citation to the record, is not a "dispute."  D.N.M.LR-Civ. 56.1 (explaining that each disputed fact "must refer with particularity to those portions of the record upon which the non-movant relies").

aggressive or unsafe driving.  (Pl.'s Negligence UMF ¶¶ B, D–F, H–J; Defs.' Resp. to Pl.'s

Negligence UMF ¶¶ 1–2, 5).  In August of 2020, Defendant Slaughter was "involved in a near

collision."  (Pl.'s Negligence UMF ¶ B; Defs.' Resp. to Pl.'s Negligence UMF ¶ 2).  Defendant

J.B. Hunt cited him for "driving too aggressively" and "following too closely."  (Pl.'s Negligence

UMF ¶ B; Defs.' Resp. to Pl.'s Negligence UMF ¶ 2).  He received a second citation a few

months later for an excessive braking event, where the GPS on Defendant Slaughter's truck

captured his speed at 127 miles per hour, and "aggressive driving."  (Pl.'s Negligence UMF ¶¶

D–F; Defs.' Resp. to Pl.'s Negligence UMF ¶¶ 1–2).  Plaintiff notes that while the GPS data may

be inaccurate, Defendant Slaughter was still likely speeding.[2]  (Pl.'s Negligence Resp. at 7 n.2).

Then, one month before the Plaintiff's accident, another motorist called J.B. Hunt to report

Defendant Slaughter's driving.  (Pl.'s Negligence UMF ¶ I; Defs.' Resp. to Pl.'s Negligence

UMF ¶ 4).  The resulting citation states that his driving was aggressive and unsafe for snow.

(Pl.'s Negligence UMF ¶ J; Defs.' Resp. to Pl.'s Negligence UMF ¶ 4).  Defendant J.B. Hunt

continued to employ Defendant Slaughter following these incidents.  (Pl.'s Negligence UMF ¶ L;

Defs.' Resp. to Pl.'s Negligence UMF ¶ 4).

The Parties deposed two of Defendant Slaughter's former managers from J.B. Hunt–

Wilbur Trujillo, a safety manager, and Edward Escobedo, Defendant Slaughter's second-line

manager.  (Pl.'s Punitive Damages Resp, Ex. C ("Trujillo Dep."), Ex. B ("Escobedo Dep.")).

Escobedo affirmed that Defendant Slaughter received "training relating to his position" and that

he, along with the rest of the company's truck drivers, received weekly safety topics to review.

(Defs.' Negligence UMF ¶¶ 8–9; Pl.'s Resp. to Defs.' Negligence UMF ¶¶ 8–9).  Defendant

---

[2] The Parties argue over whether the recorded speed of 127 miles per hour is accurate.  However, there is no dispute that the GPS recorded this speed and, because the Court draws all reasonable inferences in the light most favorable to the non-moving party, it is assumed that Defendant Slaughter was at speeding to some degree.

Slaughter had received 103 "points" in Defendant J.B. Hunt's system for company violations. (Pl.'s Negligence UMF ¶ M; Defs.' Resp. to Pl.'s Negligence UMF ¶ 2).  Trujillo testified that Defendant Slaughter had "a lot" of internal speeding violations and that it was "possible" that Defendant J.B. Hunt was aware that "Mr. Slaughter was the type of driver who, at least in the past had been willing to drive at unsafe speeds in snowy conditions."  (Pl.'s Negligence UMF ¶¶ P, K; Defs.' Resp. to Pl.'s Negligence UMF ¶¶ 2, 5; Trujillo Dep. at 36:13–18).[3]  Defendant Slaughter did not receive any discipline for his speeding violations.  (Pl.'s Negligence UMF ¶ R; Defs.' Resp. to Pl.'s Negligence UMF ¶ 7).[4]  When asked if J.B. Hunt knew that Mr. Slaughter was "[a] driver who needed to focus more of his attention on the roadway," Trujillo answered, "Yes."  (Trujillo Dep. at 36:25–37:1).

   **B.    Analysis**

   1.    **Whether Plaintiff's Claims for Negligent Retention, Supervision, and Training Require Expert Testimony to Survive Summary Judgment**

   As a preliminary issue, Defendants argue that Plaintiff's claims for negligent supervision, retention, and training require expert testimony to "define the standard of care" and, because Plaintiff does not provide any such testimony, summary judgment is warranted.  (Defs.' Negligence SJ Mot. at 9).  Because this case is before the Court on diversity jurisdiction, the Court considers Defendants' assertion under New Mexico state law.  *Banner Bank v. Smith*, 30

---

   [3] The Court cites directly to the record regarding Defendant J.B. Hunt's knowledge of Defendant Slaughter's behavior because the Parties disagree over what can be inferred from Trujillo's testimony.  Plaintiffs cite to Trujillo's deposition to support the proposition that "Defendant J.B. Hunt was fully aware that Defendant Clayton Slaughter was the kind of driver that would drive aggressively in unsafe weather conditions."  Pl.'s Negligence UMF ¶ K.  Defendants respond that this fact is "disputed but immaterial" and argue that "the testimony demonstrates that JBHT counseled Slaughter even in instances where the conduct complained of could not be confirmed."  Defs.' Resp. to Pl.'s Negligence UMF ¶ 5.  Rather than deem either of these conclusions an undisputed fact, the Court will quote the record.
   [4] Defendants dispute that Escobedo's deposition only reveals that he does not recall whether Defendant Slaughter was disciplined, not that no discipline occurred.  However, Defendants fail to identify any evidence that Defendant Slaughter was, in fact, disciplined.

F.4th 1232, 1238 (10th Cir. 2022); *see also Beaudette v. Louisville Ladder, Inc.,* 462 F.3d 22, 27 (1st Cir. 2006) ("In a diversity action, whether expert testimony is required is a matter of state law[.]"); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 852 (3d Cir. 1995) ([T]he requirement of expert testimony on issues of the type involved here is a matter of substantive law governing a plaintiff's burden of proof."); *Wheeler Peak, LLC v. L.C.I.2, Inc.*, No CIV 07-117, 2010 WL 611026, at *6 n.2 (D.N.M. Jan. 31, 2010) ("In a diversity action…whether a plaintiff must provide expert testimony to establish the elements of his claims is a matter governed by the state's substantive law."). *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 73 P.3d 181, 185–86 (N.M. 2003). Whether a duty exists is a question of law and whether the defendant breached that duty is a question of fact. *Id.* at 186. In New Mexico, employers have a duty to "members of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring." *Spencer v. Health Force, Inc.*, 107 P.3d 504, 511 (N.M. 2005) (internal quotations omitted). This duty encompasses the employer's obligation to reasonably hire, retain, supervise, and train their employee. *Amparan v. Demir*, 234 F. Supp. 3d 1110, 1125 (D.N.M. 2017). Each of these obligations forms the basis for is a slightly different tort. However, because they have significant overlap, courts and litigants group them together. In his response, Plaintiff combines his claim for negligent retention with his claim for negligent supervision. (Pl.'s Negligence Resp. at 11).

The New Mexico Supreme Court has at times paired "negligent retention" with "negligent hiring" and at other times paired "negligent retention" with "negligent supervision." *Compare Spencer*, 107 P.3d at 511 (grouping negligent retention and hiring together), *with Deflon v. Sawyers*, 137 P.3d 577, 586 (N.M. 2006) (grouping negligent supervision and retention together); *see also Linkewitz v. Robert Heath Trucking, Inc.*, No. CV 13-0420, 2013 WL 12138884, at *5 (D.N.M. Aug. 13, 2013) (separating negligent hiring and retention because their elements "differ slightly from those associated with negligent training and supervision"). Because the New Mexico Supreme Court has stated that these torts share the same standard of care, and the Plaintiff has intertwined these claims, the Court will evaluate whether they require expert testimony together. *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 73 (N.M. 2004) (stating common law test for "negligent supervision *or* retention" (emphasis added)); *see also Cain v. Champion Window Co. of Albuquerque, LLC*, 164 P.3d 90, 96 (N.M. Ct. App. 2007) (same); *Los Ranchitos v. Tierra Grande, Inc.*, 861 P.2d 263, 268 (N.M. Ct. App. 1993) (same). Plaintiff's claim for negligent training will be considered separately.

New Mexico courts require expert testimony in negligence cases "when the question whether a defendant's alleged negligence caused the plaintiff's injury is beyond the experience of the average layperson." *Wilcox ex rel. Est. of Wilcox v. Homestake Mining Co.*, No. Civ. 04-534, 2008 WL 4697013, at *3 (D.N.M. Oct. 23, 2008) (citing *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004)); *see also Adobe Masters, Inc. v. Downey*, 883 P.2d 133, 135-56 (N.M. 1994). Importantly, however, a negligence claim does not require expert testimony simply because it touches upon a technical industry. For instance, although medical malpractice suits typically require expert testimony, plaintiffs may proceed without it if they allege common, rather than professional, negligence. *See Cervantes v. Forbis*, 389 P.2d 210, 213

(N.M. 1964) (holding that expert testimony is "generally required" to establish causation in medical malpractice suits). *But see Toppino v. Herhahn*, 673 P.2d 1297, 1301 (N.M. 1983) (explaining that expert testimony is necessary for negligence in a procedure "which is peculiarly within the knowledge of doctors" but not where "negligence can be determined by resort to common knowledge"); *see, e.g.*, *Zamora v. St. Vincent Hosp.*, 335 P.3d 1243, 1251 (N.M. 2014) (finding that no expert testimony was necessary to prove that a radiologist should have communicated his findings to the plaintiff's other physicians because "[c]ommunication between medical personnel is not a matter that requires expert knowledge to understand the standard of care involved").

Defendants explain that the commercial trucking industry "involves technical knowledge" that the jury "cannot be expected to have." (Defs.' Negligence SJ Mot. at 10). They worry that, without expert testimony, the jury will "be left to impermissibly surmise as to the appropriate standard of care for JBHT." (*Id.* at 11). Plaintiff counters that his claim is for ordinary negligence and asks "whether Defendant J.B. Hunt acted as a reasonable person under the same or similar circumstances." (Pl.'s Negligence Resp. at 9). Accordingly, the jury will not need to interpret industry regulations or best practices, but only whether Defendant Slaughter's documented behaviors, such as "driving aggressively," alerted his employer to the possibility that he posed a "risk of injury" to the public. (*Id.*).

The New Mexico Supreme Court has not addressed whether expert testimony is necessary for negligence claims in the commercial trucking industry. In the absence of binding precedent, the Court must predict how the New Mexico Supreme Court would rule if the issue were before it. *Wade v. EMCASCO Ins.*, 483 F.3d 657, 666 (10th Cir. 2007) (explaining that, "[w]hen no controlling state decision exists, the federal court must attempt to predict what the

state's highest court would do").  Defendants' supporting cases are of little help in this matter.

Rather than discuss New Mexico state cases, Defendants cite to two federal cases which, aside

from lacking precedential authority, are factually inapplicable.  (Defs.' Negligence SJ Mot. at

10–11).  First, in *Martinez*, a plaintiff sued a tire manufacturer and transportation company for

defective design and failure to properly maintain a vehicle after a tractor-trailer's tire blew out.

*Martinez v. Cont'l Tire the Ams., LLC*, No. 17-cv-00922, 2020 WL 5943691, at *1 (D.N.M. Oct.

7, 2020).  The court reasoned, without reference to New Mexico law, that the regulations for

operating commercial motor vehicles was a "specialized area" which jurors "are unlikely to

already be familiar with." *Id.* at *5.  Expert testimony would thus help the jury understand the

"standard of care in safely maintaining and operating commercial vehicles." *Id.*

 The Court is unpersuaded that *Martinez*'s analysis is relevant to the present case.

*Martinez* never considered the retention, training, or supervision of a commercial truck driver

and installing a tire on a tractor-trailer is not comparable to disciplining an employee.  Further,

manufacturing and maintenance claims raise technical issues that frequently require expert

testimony. *Duran v. Gen. Motors Corp.*, 688 P.2d 779, 790 (N.M. Ct. App. 1983) (concluding

that expert testimony was necessary to demonstrate vehicle's design defect rendered the vehicle

not crashworthy), *overruled on other grounds by Brooks v. Beech Aircraft Corp.*, 688 P.2d 779

(N.M. 1995); *Houtchens v. Figueroa*, No. 7-CV-546, 2010 WL 11506853, at *2 (D.N.M. Jan. 26,

2010) (requiring expert testimony for negligent installation of a tire because, to find liability, "a

juror would need to hear testimony about proper installation procedures and what can happen

when a tire is not properly installed").  It does not follow that all claims pertaining to commercial

trucking evade the knowledge of the typical juror. *Cf. Valdez v. Yates Petroleum Corp.*, 155 P.3d

786, 789 (N.M. 2007) ("We conclude that the act of driving large trucks on the highway is neither unusual nor does it pose a peculiar risk… it is a common, every-day occurrence.").

Defendants' next case, *Valyou v. Vannest*, involved alleged negligent supervision of a truck driver following a collision and relied on the Federal Motor Carrier Safety Regulations ("FMCSR") to establish the employer's standard of care. No. 15-CV-0191, 2016 WL 7664288 (D. Wyo. Sept. 19, 2016). The admitted expert testimony was specifically meant to inform jurors of federal regulations which "the typical juror does not have any significant knowledge and experience with." *Id.* at *3. Though factually similar to the present case, the legal bases for the Plaintiff's claim in *Valyou* are distinct. For one, that case arose under Wyoming state law. More to the point, the Plaintiff here "is not relying on violations of the FMCSR's in order to establish negligent retention and supervision in this case," but on common law standards of care. (Pl.'s Negligence Resp. at 10). Whether expert testimony is necessary to prove violations of the FMCSR is impertinent to whether it is necessary for common-law negligence claims.

    a. **Negligent Retention and Supervision**

The Court finds that Defendant J.B. Hunt had a duty to motorists like Plaintiff to reasonably retain and supervise its drivers. The Court further concludes that no expert testimony is needed to establish the standard of care for this duty. An employer is liable for negligent retention or supervision when they knew or should have known that an employee is "unfit" for their position and "some harm might be caused by the acts or omissions of the employee who is entrusted with such position," but allow them to continue working regardless. *Los Ranchitos*, 861 P.2d at 269; *Ocana*, 91 P.3d at 73. New Mexico courts routinely allow negligent retention cases to proceed before juries without expert testimony. *See, e.g.*, *Los Ranchitos*, 861 P.2d at 269 (reversing grant of summary judgment on negligent retention and supervision); *Valdez v. Warner*,

742 P.2d 517, 520 (N.M. Ct. App. 1987) (finding that plaintiff was entitled to jury instruction on negligent hiring or retention for bouncer hired by bar).  Relevant to the issue of whether juries can determine an employer's duty in hiring drivers is *Lessard*, where the New Mexico Court of Appeals permitted a jury to determine whether an employer negligently retained an employee who caused a car accident.  *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 169 (N.M. Ct. App. 2007).  The court concluded that employers have a "duty to the motoring public," but "[j]ust how this obligation is satisfied depends on the circumstances of the case" and is a "question of fact for the jury."  *Id*. at 167.

The Court does not believe that the standard of care in retaining an employee who drives a car and retaining a commercial truck driver is specialized enough to warrant expert testimony.  Given New Mexico courts' refusal to insist on expert testimony in "common negligence" claims against professionals, the Court finds it inappropriate to import such a standard here.  The average juror is familiar with the risks that commercial truck drivers pose to the public.  *See Romero v. State*, 814 P.2d 1019, 1028 (N.M. Ct. App. 1991) ("Automobiles and highways are sufficiently familiar to the ordinary citizen that in general we would not *require* a finding of, say, causation to be predicated on an expert opinion that a particular factor was a probable cause of the accident."); *Valdez*, 141 N.M. at 384 ("We conclude that the act of driving large trucks on the highway is neither unusual nor does it pose a peculiar risk… it is a common, every-day occurrence.").  An employer's evaluation of whether an employee poses that risk is "within the knowledge of a layman" and does not require the jury to "stack inferences upon inferences."  *Duran*, 688 P.2d at 790.  Though the scope of Defendant J.B. Hunt's duty to retain and supervise Defendant Slaughter may differ from that of the employer in *Lessard*, a jury can determine these distinctions.  *Lessard*, 168 P.2d at 595 ("Any question regarding the scope of that duty, that is,

whether it includes a duty to investigate the driver's record and how that duty may be satisfied, is a question of breach of the employer's duty, which is a question of fact for the jury.").  Thus, Plaintiff's claims for negligent retention and supervision can proceed under the common-law standard of care, whether Defendant J.B. Hunt knew or should have known that Defendant Slaughter posed a risk to the public, and do not require expert testimony.

**b.  Negligent Training**

The Court reaches a different conclusion regarding Plaintiff's claim of negligent training. Like a claim for negligent retention, the tort of negligent training requires Plaintiff to show that Defendant J.B. Hunt knew or should have known that Defendant Slaughter "was an unfit driver and that [the company] nonetheless failed to exercise reasonable care in training" him. *Linkewitz*, 2013 WL 12138884, at *6; *see also* Restatement (Third) of Agency § 7.05(1) (2006). The Court has not found any on-point New Mexico decisions discussing whether negligent training of commercial truck drivers needs expert testimony and courts in other jurisdictions have conflicting views.  The U.S. District Court for the District of Kansas, for example, denied summary judgment for a lack of expert testimony where a plaintiff alleged that a company failed to properly train a truck driver on its "no U-turn" policy.  *Workman v. Kretzer*, No. 20-2605, 2021 WL 6049848, at *2 (D. Kan. Dec. 21, 2021).  Acknowledging that the trucking industry is "heavily regulated," the court maintained that expert testimony was unnecessary for a suit that "has not cited any regulations applicable to that particular training."  *Id.*  Further, Kansas limits expert testimony to professional negligence claims.  "Thus, in the absence of Kansas authority requiring expert testimony outside the context of a professional negligence claim, the Court declines to impose such a requirement here."  *Id.*

The U.S. District Court for the District of South Dakota disagreed in *Levene* and held that

a plaintiff's claim for negligent training against a trucking company required expert testimony.

*Levene v. Staples Oil Co.*, 685 F. Supp. 3d 791, 805 (D.S.D. 2023). The court explained:

> Although the court can safely conclude that a lay person could recognize that a
> company that provides no training at all to any of its drivers… would be
> negligent, this case does not involve such an extreme scenario… Because a lay
> person does not commonly encounter the truck industry's standard of care for the
> amount of training a truck driver should provide to commercial drivers–especially
> drivers such as [defendant] who had previous experience and training with
> commercial driver–court predicts that the Supreme Court of South Dakota
> would require plaintiffs to introduce expert testimony on this subject.

*Id.* at 804.

The Court first notes that New Mexico law more closely resembles South Dakota state

law than Kansas. Where Kansas has limited expert testimony to professional negligence claims,

South Dakota demands it in a more expansive range of cases, such as manufacturing defect

claims. *See, e.g.*, *Burley v. Kytec Innovative Sports Equip., Inc.*, 737 N.W.2d 397, 407–08 (S.D.

2007). Similarly, "New Mexico courts have [] required expert testimony to show causation in

cases involving medical negligence, professional malpractice, crashworthiness, negligent

installation, and stray voltage claims." *Belgravia Hartford Gold Assets Corp. v. PolyNatura*

*Corp.*, ___ F. Supp. 3d ___, No. 21-CV-00918, 2025 WL 438644, at *10 (D.N.M. Feb. 7, 2025);

*see also Am. Mech. Sols., LLC v. Northland Process Piping, Inc*, 184 F. Supp. 3d 1030, 1064–65

(D.N.M. 2016) (collecting cases).

Plaintiff does not allege that Defendant Slaughter received *no* training, but that the

retraining Defendant J.B. Hunt provided was "clearly inadequate and ineffective." (Pl.'s

Negligence Resp. at 9). Managers at J.B. Hunt affirmed, and Plaintiff does not contest, that

Defendant Slaughter was taught that it is improper to drive aggressively, make unsafe lane

changes, and speed in inclement weather conditions. (Trujillo Dep. at 45:10–22). He also

14

received regular training courses, completed a road test with J.B. Hunt, and received tailored training following his accident with Plaintiff.  (Defs.' Negligence SJ Mot. at 4–5).  Defendant Slaughter had held his commercial trucking license for over thirty years and was a seasoned driver, increasing the complexity of what constitutes "proper" training.  *Cf. Mendoza v. PGT Trucking, Inc.*, No. 18-cv-432, 2020 WL 1902562, at *4 (W.D. Tex. Jan. 27, 2020) (finding that employer "had no legal duty to 'annually' train [truck driver] on how to make safe lane changes"); *Perry v. Cummings*, No. 22-CV-3869, 2023 WL 11763152, at *2 (N.D. Ga. Oct. 20, 2023) (granting summary judgment on negligent training claim where truck driver "maintained a Commercial Driver License on the date of the accident" because such license "precludes the need for driver training").  Plaintiff's training claim would require the jury to consider Defendant Slaughter's experience, what would constitute reasonable training, and whether the training provided was sufficient.  Without expert testimony informing this analysis, the jury would have to "speculate or conjecture" as to the particularities of commercial truck driver training. *Mascarenas v. Gonzales*, 497 P.2d 751, 752 (N.M. Ct. App. 1972).  Because this case does not present a cut-and-dry example of an employer providing no training, the Court predicts that the New Mexico Supreme Court would require expert testimony and therefore grants summary judgment to Defendants on Plaintiff's negligent training claim.

1. **Whether the Defendants Are Entitled to Summary Judgment for Plaintiff's Claims of Negligent Retention and Supervision**

Although negligent retention and supervision share a common standard of care, their factual analyses differ and the Court will independently analyze the factual bases for these claims.  *See, e.g.*, *Los Ranchitos*, 861 P.2d at 269–71 (conducting separate factual analyses for negligent supervision and retention); *Cain*, 164 P.3d at 96 (same).

### a. Negligent Retention

Because Plaintiff has established a standard of care for negligent retention, the next question is whether the facts entitle Defendant J.B. Hunt to summary judgment as a matter of law. To succeed on his negligent retention claim, Plaintiff must show that he is a "member of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring." *Warner*, 742 P.2d at 520. He must then point to evidence showing that Defendant J.B. Hunt became aware, or should have become aware of, problems with Defendant Slaughter "that indicated his [] unfitness," but "fail[ed] to take further action such as investigating, discharge, or reassignment." *Spencer*, 107 P.3d at 511. Finally, he must demonstrate that Defendant J.B. Hunt's retention of Defendant Slaughter was the proximate cause of the accident. *Warner*, 742 P.2d at 520–21; *Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 655 (10th Cir. 2014) (explaining that causation is a required element of negligent supervision in New Mexico).

Plaintiff has pointed to sufficient evidence on each element of his negligent retention claim. First, he was within the foreseeable class of individuals who would be harmed by Defendant Slaughter's driving because he was a motorist and the accident occurred when Defendant Slaughter was acting within the scope of his employment. *Lessard*, 168 P.3d at 166 (finding that employer could reasonably anticipate employee would have a car accident because he was "required to drive between jobs"); *cf. F & T Co. v. Woods*, 594 P.2d 745, 747 (N.M. 1979) (holding that employer was not liable for tortious acts of off-duty employee). Second, Trujillo's deposition suggests that the company knew of Defendant Slaughter's negligent propensities. Trujillo stated that the company was aware that, at times, Defendant Slaughter was an inattentive driver. (Trujillo Dep. at 33:25–34:1). Trujillo also characterized Defendant Slaughter's speeding violations as "a lot." (Trujillo Dep. at 45:3–5). Defendants also admit that Defendant Slaughter

16

had "violated company standards on three occasions prior," but dismiss Plaintiff's concerns as inactionable because J.B. Hunt took corrective action; they suspended Defendant Slaughter and verbally warned him "to avoid driving at unsafe speeds in the snow." (Trujillo Dep. at 36:9–12). While no single violation is, on its own, evidence of an unreasonable risk, persistent speeding, combined with the three violations across a six-month period, means that Defendants are not entitled to summary judgment as a matter of law. Further, Defendants' contention that the verbal counseling and suspension were sufficient corrective actions is a question for the jury and not the Court. It is clear that Defendant J.B. Hunt knew of issues with Defendant Slaughter's driving and that those problems posed a risk to the public. *Cf. Workman*, 202l WL 6049848, at *3 ("Plaintiff alleges that Mr. Kretzer acted negligently in trying to turn around on the highway, but it has not cited any evidence that Marten retained Mr. Kretzer despite knowledge that Mr. Kretzer had a propensity for making such decisions or otherwise driving improperly."); *Mireles v. Ashley*, 201 S.W.3d 779, 783–84 (Tex. Ct. App. 2006) ("[P]roof of seven citations for moving traffic violations in the span of three years is some evidence that a driver is reckless and incompetent"); *Woods*, 594 P.2d at 748.

Lastly, Plaintiff alleges there is evidence of causation because there is a close nexus between Defendant Slaughter's previous violations and this accident. Unlike cases where the behavior that caused the accident was dissimilar to previous violations, Defendant Slaughter's citations are of the same ilk as the problem here—aggressive driving, unsafe lane changes, and driving too fast in the snow. *Cf. Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 468 (E.D. Ky. 2021) (no causation where trucker had two "hard braking" events due to distracted driving but "there was no evidence whatsoever that the result of the accident here was caused by [trucker] being distracted by a cellphone or anything else); *Cain*, 164 P.3d at 96 (granting

summary judgment on negligent supervision claim where employee was hired to install windows and negligent act occurred while installing stove).  Given Defendant J.B. Hunt's awareness of Defendant Slaughter's violations and the connection between those issues and the present incident, Defendants have failed to prove that the evidence is "so one-sided that [they] must prevail as a matter of law." *Becker*, 709 F.3d at 1022.  The Court therefore denies Defendants' motion for summary judgment on Plaintiff's claim of negligent retention.

### b.  Negligent Supervision

Plaintiff has not alleged sufficient facts to defeat Defendants' motion for summary judgment on his claim of negligent supervision.  Negligent supervision requires Plaintiff to show that Defendant Slaughter's "retained the right to control the details of [his] work," but failed to properly monitor his conduct. *Los Ranchitos*, 861 P.2d at 270.  First, there is no evidence that any of Defendant Slaughter's managers could control his decisions on the road. *Cf. Cain*, 164 P.3d at 96 (granting summary judgment on claim of negligent supervision where employer did not "monitor the employee's work and activities on a daily basis").  Plaintiff's sole evidence of inadequate supervision is that Escobedo "was not properly monitoring Defendant Slaughter[']s violations history, allowing him to accumulate numerous improper speeding violations over a months-long period of time." (Pl's. Negligence Resp. at 11).  Evidence of breaking the company's speed limit does not, however, put Defendant's Slaughter's managers on notice of a pattern of unsafe lane changes.  Moreover, Plaintiff does not elaborate on the causal connection between these speeding violations and the accident, nor does he explain what a reasonably prudent employer would have done differently. *See, e.g.*, *Onofre v. C.R. England*, No. 14-2497, 2016 WL 3406195, at *5 (W.D. Tex. June 7, 2016) (granting summary judgment where plaintiff "provided no evidence that this failure [to properly train or supervise truck driver] proximately

caused [her] accident"). Without evidence of causation, Plaintiff's claim cannot survive. *See Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("Judgment as a matter of law is appropriate where the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof."); *see also Dahlberg*, 571 F. App'x at 655 (holding that the lack of a "causal link between any presumed negligence on the part of [the company] and the harm ultimately suffered" was "fatal" to claim for negligent supervision"). The Court therefore grants Defendants' motion for summary judgment on Plaintiff's claim of negligent supervision.

## II. Defendants' Punitive Damages Partial Summary Judgment Motion

### A. Undisputed Material Facts

Plaintiff was driving in front of Defendant Slaughter in the right lane during snowy conditions. (Pl.'s Punitive Damages UMF ¶ X; Defs.' Resp. to Pl.'s Punitive Damages UMF ¶ 20). Defendant Slaughter then moved lanes, sped up, passed Plaintiff, and attempted to merge back into the right lane. (Pl.'s Punitive Damages UMF ¶¶ X–Y; Defs.' Resp. to Pl.'s Punitive Damages UMF ¶¶ 20–21). Defendant Slaughter then side-swiped Plaintiff's vehicle. (Pl.'s Punitive Damages UMF ¶ Z; Defs.' Resp. to Pl.'s Punitive Damages UMF ¶ 21). Though Plaintiff maintains that Defendant Slaughter was driving too quickly for conditions, he does not allege that Defendant Slaughter was exceeding the legal speed limit or using his cell phone at the time. (Defs.' Punitive Damages UMF ¶¶ 7–8; Pl.'s Resp. to Defs.' Punitive Damages UMF ¶¶ 7–8). Plaintiff does not believe the incident was intentional. (Defs.' Punitive Damages UMF ¶ 10; Pl.'s Resp. to Defs.' Punitive Damages UMF ¶ 10). The investigating officer did not issue any charges against Defendant Slaughter. (Defs.' Punitive Damages UMF ¶ 9; Pl.'s Resp. to Defs.' Punitive Damages UMF ¶ 9). Defendant J.B. Hunt's internal report states that the root cause of

the incident was Defendant Slaughter's unsafe lane change.  (Pl.'s Punitive Damages UMF ¶ BB; Defs.' Resp. to Pl.'s Punitive Damages UMF ¶ 23).

### B.   Analysis

The Court grants Defendant's motion for summary judgment regarding punitive damages. Like his negligence claims, New Mexico law governs Plaintiff's demand for punitive damages. *Ensminger v. Terminix Int'l Co.*, 102 F.3d 1571, 1576 (10th Cir. 1996) ("Punitive damages are substantive law dictated by state law.").  Punitive damages are intended to "punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future."  *Gillingham v. Reliable Chevrolet*, 966 P.2d 197 (N.M. Ct. App. 1998); *Conant v. Rodriguez*, 818 P.2d 425, 429 (N.M. Ct. App. 1992).  Punitive damages are appropriate where "a party intentionally or knowingly commits wrongs" or "when a defendant is utterly indifferent to the plaintiff's rights, even if the defendant lacked actual knowledge that his or her conduct would violate those rights."  *Yedidag v. Rowell Clinic Corp.*, 346 P.3d 1136, 1152 (N.M. 2015). Punitive damages must be proven by a preponderance of the evidence.  *Fuller v. Finley Res., Inc.*, 176 F. Supp. 3d 1263, 1268 (D.N.M. 2016).

"Though the vast majority of motor vehicular collisions result from intentional turns or acts of one kind or another, only a small percentage of such acts exceed the level of ordinary negligence."  *Holbrook v. Gavito*, CV 07-1100, 2009 WL 10700122, at *2 (D.N.M. Apr. 3, 2009) (quoting *Howard v. Parker*, 382 S.E.2d 808, 810 (N.C. Ct. App. 1989)).  The exception to this rule is a driver who ignored obvious risk to others in deciding to get behind the wheel, such as driving while intoxicated or severely exhausted.  *See, e.g.*, *Svejcara v. Whitman*, 487 P.2d 167, 170 (N.M. Ct. App. 1971) (awarding punitive damages where driver was "driving in a reckless manner while intoxicated" and caused collision that "spun plaintiff's car almost 90 degrees, blew

out the left rear tire, bent the left rear wheel, ruptured the gas tank, and bent the left rear door and fender"); *DeMatteo v. Simon*, 812 P.2d 361, 364 (N.M. Ct. App. 1991) (affirming award of punitive damages where defendant "displayed utter indifference for the safety of others when he decided to drive" by remaining awake for twenty hours and consuming marijuana before driving).  Short of such egregious actions, courts do not grant punitive damages for negligent driving.  For instance, one court concluded that punitive damages were inappropriate where the defendant had allegedly used their cellphone and "failed to yield to [Plaintiff] and started to make a left turn early at the intersection." *Fuller*, 176 F. Supp. 3d at 1268.  Though negligent, there was "no evidence that [Defendant] was speeding or driving erratically or recklessly at the time of the accident." *Id.*

Plaintiff has not pointed to facts that demonstrate that Defendant Slaughter acted with such flagrant disregard for human life or with a willful mental state.  The aggravating circumstances present in cases like *DeMatteo* and *Svejcara* are absent here.  *See Battle v. Thomas*, 623 F. Supp. 3d 1312, 1319 (N.D. Ga. 2022) (denying punitive damages following side-swipe where truck driver was "[a]t worst, careless").  Plaintiff's sole factual allegation regarding Defendant Slaughter's state of mind is that he changed lanes without looking and that he was "exceeding a safe speed for conditions at the time."  (Pl.'s Punitive Damages Resp. at 2); *see Walker v. Spina*, No. Civ. 17-0991, 2018 WL 6519133, at *18  (D.N.M. Dec. 11, 2018) (genuine factual question over whether defendant "applied his brakes soon enough and whether he slowed to the fifteen miles per hour to which he states that he slowed" did not "establish a genuine dispute of material fact whether Spina acted with utter indifference toward others on the road"). In his own deposition, Plaintiff admitted that he does not believe that the side-swipe was intentional.  (Defs.' Punitive Damages SJ Mot., Ex. C at 3).  There is also no evidence that

Defendant Slaughter was texting while driving, or that he was above the posted speed limit.[5]  At worst, Defendant Slaughter was driving too fast for snowy conditions and failed to look when changing lanes.  While irresponsible if true, this conduct does not constitute "willful, wanton, malicious, or reckless disregard for the rights of others."  *Fuller*, 176 F. Supp. 3d at 1267; *Booker v. P.AM. Transp., Inc.*, No. 23-cv-0018, 2024 WL 4627534, at *2 (D.N.M. Oct. 30, 2024) (slip op.) ("[P]unitive damages are not appropriate for mere carelessness, negligence or inattention.").

## CONCLUSION

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' motion for partial summary judgment on Plaintiff's claims for negligent hiring, retention, supervision, and training is granted in part and denied in part.  The motion is granted with respect to Plaintiff's claims for negligent hiring, training, and supervision.  The motion is denied with respect to plaintiff's claim for negligent retention.

**IT IS FURTHER ORDERED BY THE COURT** that Defendants' motion for partial summary judgment on Plaintiff's demand for punitive damages is granted.

---

[5] Plaintiff's original complaint stated that Defendant Slaughter was "dangerously distracted by his cell phone."  (Compl. ¶ 13).  However, in Defendants' statement of undisputed material facts, they stated that Defendant Slaughter was not using his cell phone, and Plaintiff did not dispute this assertion in his response.  (Defs.' Punitive Damages UMF ¶ 8, Pl.'s Resp. to Defs.' Punitive Damages UMF ¶ 8).

**IT IS SO ORDERED.**

_____

**SARAH M. DAVENPORT**

**UNITED STATES DISTRICT JUDGE**